UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
WOODROW FLEMMING,

                        Plaintiff,

        -against-                             **ORDER AND MEMORANDUM**
                                                        03-CV-0662 (NGG) (LB)
CITY OF NEW YORK, YVES GAUVIN, M.D.,
SUZETTE MCKENZIE, JOHN DOE, M.D.,
JANE DOE, M.D., NIC RIKERS ISLAND
ANNEX,

                        Defendants.
-------------------------------------------------------------X
GARAUFIS, United States District Judge:

        Plaintiff Woodrow Flemming ("Plaintiff" or "Flemming") brought this *pro se* action pursuant to 42 U.S.C. § 1983, alleging that defendants City of New York ("New York City" or "the City"), Yves Gauvin, M.D. ("Dr. Gauvin"), and Suzette McKenzie ("McKenzie"), other unnamed medical staff ("John Doe" and "Jane Doe"), and the Rikers Island Annex (collectively, "the Defendants") failed to provide medical treatment to Plaintiff, resulting in permanent injury, and that these actions violated the Eighth Amendment of the U.S. Constitution. Defendants move to dismiss this action pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons set forth below, Defendants' motion is GRANTED in part and DENIED in part.

**I.       BACKGROUND**

**A.     Factual Background**

        Plaintiff during all relevant periods was a prisoner in the Rikers Island municipal correctional facility ("the facility"). On September 1, 2002, Flemming suffered an injury while exiting his cell in the facility when he slipped on a pool of water from a nearby leak in the showers and fell on his back. (Am. Compl. at 4.) Defendants transported Plaintiff to Bellevue

Hospital, where he had his X-ray taken, and he was provided with pain medication. (Id.) Early in November 2002, Flemming was admitted to the facility's North Infirmary Command Annex ("the infirmary"), where he was treated by Dr. Gauvin, his treating physician. (Id.) Plaintiff reported to Dr. Gauvin that he continued to experience pain from the fall, and Dr. Gauvin recommended a Magnetic Resonance Imaging ("MRI") of his back, and told him that he would arrange for it. (Id.) Instead, Dr. Gauvin arranged to take an additional X-ray of Plaintiff, which showed injuries in the L4-L5 discs. (Id.) Dr. Gauvin then took leave from the infirmary between November 2002 and October 2003. (Id. at 5.)

In December 2002, Plaintiff complained again about back pain to McKensie, the clinic administrator at the infirmary, who said that she would arrange for additional X-rays and an MRI of Plaintiff's back. (Id.) Plaintiff had numerous subsequent discussions with McKensie through September 2003, in which she assured Plaintiff that the infirmary would take an MRI of him. (Id.) However, it never did. (Id.) From November 2002 through October 2003, while Dr. Gauvin was not practicing at the infirmary, Plaintiff asked for treatment from other medical staff at the infirmary, who told him to wait until Dr. Gauvin returned. (Id.)

Plaintiff alleges that as a result of not receiving an MRI, he is in constant pain, uses a wheel chair, walker, and cane to ambulate, cannot walk for long periods, and has difficulty sleeping. (Id.) Plaintiff alleges that his injuries are the result of Defendants' failure to provide necessary medical treatment in violation of his rights under the Eighth Amendment of the U.S. Constitution.[1] (Id. at 5.)

---

[1] Defendants also seek to dismiss any pendant state claims alleged in Plaintiff's Amended Complaint. (Def's' Mem. Supp. Mot. Dismiss at 13-15.) Upon review of Plaintiff's Amended Complaint, this court finds no assertion of a state claim. I therefore deny Defendants' motion to dismiss state claims as moot, but grant Defendants leave to refile this motion should Plaintiff inform this court that he does allege a violation of state law.

B.    **Procedural Background**

Plaintiff internally grieved his treatment denial on February 5, 2003 and August 18, 2003, and appealed the denial of these grievances on September 4, 2003. (Am. Compl. at 10-12.) After Plaintiff's administrative complaints were denied, he timely filed this suit.

Plaintiff's *pro se* complaint was transferred from the Southern District of New York to this court on February 5, 2003. On July 8, 2003, I issued a Memorandum and Order that, while granting his application for in forma pauperis relief, dismissed the complaint for failure to state a claim. (Memorandum and Order, dated July 8, 2003 ("7/8/03 M&O") at 4.) I first found that Plaintiff failed to allege that his rights were denied pursuant to a "policy or custom" of New York City, which is required to maintain a § 1983 suit against a municipality. (Id. at 2 (citing Bd. of Country Comm'rs of Bryan County, Okl. v. Brown, 520 U.S. 397, 403 (1997)). I also found that Plaintiff failed to state a claim for inadequate medical treatment in violation of the Eighth Amendment of the U.S. Constitution[2] because he failed to allege that "defendants delayed, denied or interfered with plaintiff's medical treatment." (Id. at 3.) As Plaintiff filed his complaint *pro se*, I directed him to amend his complaint, naming the individuals who allegedly acted under color of law and setting forth "specific facts to establish that defendants were deliberately indifferent to his serious medical needs." (Id. at 3.)

---

[2] Plaintiff does not specify whether he was an incarcerated prisoner or a pretrial detainee at the time of the alleged injury, which would guide this court as to whether Flemming alleged a violation of the Eighth or Fourteen Amendments of the U.S. Constitution. The Eighth Amendment protects incarcerated prisoners from cruel and unusual punishment, while the Due Process Clause of the Fourteenth Amendment protects pretrial detainees from inadequate medical care by the state. See Thomas v. Nassau County Corr. Ctr., 288 F. Supp. 2d 333, 337 (E.D.N.Y. 2003). However, "the standard for analyzing a pre-trial detainee's Fourteenth Amendment claim is the same as the Eighth Amendment standard," id., which allows this court to presume for the purposes of this motion that Flemming's allegations implicate his Eighth Amendment rights, as stated in the Amended Complaint.

On August 16, 2003, Plaintiff responded to the 7/8/03 M&O by requesting this court's assistance in ascertaining the names of the individuals who treated him. (Pl's Ltr. to the Court, dated Aug. 16, 2003.) After vacating an earlier entered judgment, this court vacated the dismissal and permitted Plaintiff an extension to amend the Complaint after identifying medical personnel associated with his treatment. (Order, dated Oct. 31, 2003.)

From August 2003 through December 2003, Plaintiff filed numerous letters with this court indicating that he had been unable to identify the treating medical staff, and on April 22, 2004, I ordered counsel for New York City to provide the names of medical staff involved in Plaintiff's treatment. (Order, dated April 22, 2004, at 2-3, 6-7.) Furthermore, I dismissed Plaintiff's claim regarding his treatment by medical staff at Bellevue Hospital, inasmuch as records submitted by Plaintiff made clear that Plaintiff received appropriate medical treatment there, and ordered removed from the caption all subdivisions of DOC. (Id. at 4-5.) However, I permitted Plaintiff to amend his Complaint as against Rikers Island medical staff based on his allegation that he was completely denied medical treatment by them. (Id. at 5.)

On August 9, 2004, Plaintiff filed the Amended Complaint that this court relies on for its recitation of the facts in this M&O. After a series of attempts to serve Defendants by the U.S. Marshals Service, Defendants appeared and moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) on November 10, 2005. On November 21, 2005, Plaintiff filed a "Notice of Motion Under Rule 56(c)" that in sum and substance opposes Defendant's Rule 12(b)(6) motion.[3] (See

---

[3] This court notes that Plaintiff submits his papers in nearly illegible print that this court has expended considerable effort to understand. Plaintiff is instructed that future submissions should be made through the use of a typewriter, and if a typewriter is unavailable, in legible handwriting.

Pl's Notice of Motion Under Rule 56(c), dated Nov. 21, 2005 ("Pl.'s Opp. Def's' Mot. Dismiss").) As Plaintiff's submissions to the court proffers no evidence in support of his claims, and instead opposes Defendant's motion based on his allegations in the Amended Complaint, I deem Plaintiff's filings to be his opposition to Defendants' Rule 12(b)(6) motion, and to the extent that Plaintiff also moves under Fed. R. Civ. P. 56(c) for summary judgment, I deny that motion.

I shall now consider whether Plaintiff's allegations state a claim under Rule 12(b)(6).

## II. DISCUSSION

### A. Standard of Review

In reviewing a motion to dismiss for failure to state a claim brought pursuant to Fed R. Civ. P. 12(b)(6), the court must accept all factual allegations in the complaint as true and draw all reasonable inferences from those allegations in the light most favorable to the plaintiff. See Albright v. Oliver, 510 U.S. 266, 268 (1994); Burnette v. Carothers, 192 F.3d 52, 56 (2d Cir. 1999). The complaint may be dismissed only if "it appears beyond doubt, even when the complaint is liberally construed, that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Hoover v. Ronwin, 466 U.S. 558, 587 (1984) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). In deciding such a motion, the "issue is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." Bernheim v. Litt, 79 F.3d 318, 321 (2d Cir. 1996) (internal quotations omitted).

Because plaintiff proceeds *pro se*, his pleadings must be read liberally and interpreted as raising the strongest arguments they suggest. McEachin v. McGuinnis, 357 F.3d 197, 200 (2d Cir. 2004); Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994). If a liberal reading of the Complaint "gives any indication that a valid claim might be stated," this court must grant leave to amend the complaint. See Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000); Gomez v.

USAA Fed. Sav. Bank, 171 F.3d 794, 795 (2d Cir. 1999).

**B.     *John Doe, M.D. and Jane Doe, M.D.***

Plaintiff continues to list "John Doe's, M.D." and "Jane Doe's, M.D." in his Amended Complaint, which this court infers stems from his allegation that other medical personnel at the infirmary failed to attend to his medical needs and instructed him to wait until Dr. Gauvin returned from his military service performed from November 2002 through October 2003. In my April 22, 2004 Order, I instructed Defendants to provide Plaintiff with the names of all medical staff associated with Plaintiff's treatment, which, absent any allegation to the contrary, I presume that it has done. This court has provided Plaintiff with numerous opportunities over the past three years to amend his Complaint to state a claim, and over the past two years to identify any other personnel who might have treated him during the relevant period. Furthermore, in my 7/8/03 M&O I cautioned Plaintiff that there is no tolling of the statute of limitations for failure to identify unnamed defendants. In New York, the statute of limitations for Section 1983 claims is three years. Connolly v. McCall, 254 F.3d 36, 40-41 (2d Cir. 2001). Plaintiff's claim accrued no later than February 2003, when Plaintiff first grieved the alleged failure by infirmary medical staff to treat him. I therefore find that Plaintiff's suit against unidentified medical personnel of the infirmary is time-barred and must be dismissed.

**C.     *New York City Department of Corrections***

The caption of this case lists "NIC Rikers Island Annex" as a defendant in this case. Defendants concede that this entity is a subdivision of the New York City Department of Corrections ("DOC"). (Def's' Mem. Supp. Mot. Dismiss at 1 n.1.) I therefore deem this suit as proceeding against DOC.

Defendants argue that this court must dismiss all claims against DOC because as a subdivision of New York City it is not a suable entity. (Def's' Mot. Dismiss at 1-2.) The New

York City Charter provides that "All actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the City of New York and not in that of any agency, except where otherwise provided by law." N.Y. City Charter § 396. As an agency of New York City, therefore, DOC is not a suable entity. Wilson v. New York, 800 F. Supp. 1098, 1101 (E.D.N.Y. 1992); East Coast Novelty Co. v. City of New York, 781 F. Supp. 999, 1010 (S.D.N.Y. 1992); Martin v. City of New York, 627 F. Supp. 892, 894 n.2 (E.D.N.Y. 1985).

Accordingly, Plaintiff's claims against DOC must be dismissed.

### D. *New York City*

Defendants argue that Plaintiff's complaint must be dismissed against New York City because Plaintiff failed to establish that the alleged violation of Plaintiff's Eighth Amendment rights were a result of a New York City "policy" or "custom" that would allow Plaintiff to maintain a claim against the City under Monell v. Dep't of Social Services, 436 U.S. 658, 690-691 (1978) (Def's' Mem. Supp. Mot. Dismiss at 2-3), and the complaint does not allege a violation under the Eighth Amendment because there is no allegation that medical services were withheld as a result of "deliberate indifference." (Id. at 4-9.)

*1. Policy or Custom*

In Monell v. New York City Dept. of Social Services, 436 U.S. 658 (1978), the Supreme Court held that a municipality can be found liable under § 1983 "only where the municipality itself causes the constitutional violation at issue. Respondeat superior or vicarious liability will not attach under § 1983." City of Canton v. Harris, 489 U.S. 378, 385 (1989) (citing Monell, 436 U.S. at 694-695.) However, in Harris the Supreme Court clarified that a Monell claim may proceed against a municipality where the plaintiff alleges that the constitutional violation resulted from the failure of the municipality to adequately train its staff in the otherwise valid policy. See

7

Harris, 489 U.S. at 387 (permitting suit under § 1983 pursuant to challenge actions pursuant to "concededly valid policy . . . if the employee has not been adequately trained and the constitutional wrong has been caused by that failure to train.")

I find that Plaintiff's claim sufficiently alleges an unconstitutional application of New York City policy requiring the City to provide medical care to prisoners. Plaintiff alleges that the infirmary staff treated him "under the Custom [and] Policy of the City of New York and the Department of Correction, and New York Health Medical Cooperation for the City of New York Medical Department[.]" (Am. Compl. at 2.) As Plaintiff is *pro se*, I infer from this allegation that he refers to the New York City Charter, which provides that the New York City Board of Corrections ("the Board") is responsible for establishing minimum standards for the medical care of inmates of prisons maintained and operated by the City. New York City Charter § 626(e). Thus, Plaintiff's allegation gives rise to the permissible inference under Rule 12(b)(6) that the City failed to train infirmary staff regarding the Board's minimum standards of care, which suffices to state a Monell claim under Harris.

2.  *Deliberate Indifference*

Next, the Defendants argue that Plaintiff fails to adequately plead facts that might state a claim for a violation of his Eighth Amendment Rights. In Chance v. Armstrong, 143 F.3d 698 (2d Cir. 1998), the Second Circuit instructed:

> In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove deliberate indifference to [his] serious medical needs. The standard of deliberate indifference includes both subjective and objective components. First, the alleged deprivation must be, in objective terms, 'sufficiently serious.' Second, the defendant must act with a sufficiently culpable state of mind. An official acts with the requisite deliberate indifference when that official knows of and disregards an excessive risk to inmate health or

8

> safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

Id. at 702 (internal quotation marks and citation omitted). Defendants contend that Plaintiff did not suffer a serious injury and was provided adequate treatment, and so his Complaint must be dismissed. (Def's' Mem. Supp. Mot. Dismiss at 4-9.)

As Defendants are no doubt aware, this court must accept all alleged facts as true and make all permissible inferences to present *pro se* claims in their best light. The crux of Plaintiff's claim is that he sought necessary medical treatment for a serious injury, which Gauvin and McKenzie maintained that they would provide for him, but which they failed to provide, causing serious permanent injury to Plaintiff. (See Pl's Mem. Opp. Mot. Summ. J. at 12-13.) Accepting these allegations, as I must under a Rule 12(b)(6) analysis, Plaintiff's allegations meet the Second Circuit standard for "sufficiently serious." See Harrison v. Barkley, 219 F.3d 132, 136 (2d Cir. 2000) (holding that if the denial of treatment causes an inmate to suffer a life-long handicap or permanent loss, the medical need may be considered serious). Plaintiff's allegation that Gauvin and McKenzie promised to provide him with an MRI but then did not do so gives rise to the inference that they understood that an MRI was a necessary medical procedure, and that if that is true then their failure to provide the MRI rises to the level of "deliberate indifference" under Chance. See Martinez v. Mancusi, 443 F.2d 921 (2d Cir. 1970), cert. denied, 401 U.S. 983 (1971) (finding that a cause of action exists where prison personnel deny treatment prescribed by a physician); Corby v. Conboy, 457 F.2d 251 (2d Cir. 1972) (holding that prisoner states cause of action where prison unreasonably delays providing a seriously ill or injured prisoner access to medical personnel). The substitution of an X-ray for an MRI would not necessarily constitute adequate treatment for such an injury, although it is considerably less

expensive to administer.

### E.     *Dr. Gauvin and McKenzie*

Next, Defendants move to dismiss claims against Gauvin and McKenzie on the grounds that Gauvin and McKenzie were not involved in Plaintiff's alleged failure to receive medical services (Def's' Mem. Supp. Mot. Dismiss at 9-11), and they are entitled to qualified immunity. (Id. at 11-13.) Defendants' argument that Plaintiff fails to allege any personal involvement of Gauvin or McKenzie in his injuries is without merit because, as stated supra, Plaintiff alleges that Gauvin and McKenzie promised to provide necessary medical services and failed to do so.

Turning now to Defendants' argument that Gauvin and McKenzie are entitled to qualified immunity in their alleged failure to provide medical services to Plaintiff, while Defendants correctly note that qualified immunity claims should be resolved early in the lawsuit, (see Def's' Mem. Supp. Mot. Dismiss at 11 (quoting Anderson v. Creighton, 483 U.S. 635, 646 (1987)), this preference must be balanced against the fact that a qualified immunity claim, unlike the defense of absolute immunity, is fact-specific and rarely granted in a Rule 12(b)(6) motion. See Green v. Maraio, 722 F.2d 1013, 1018 (2d Cir. 1983) ("Usually, the defense of qualified immunity cannot support the grant of a Fed.R.Civ.P. 12(b)(6) motion for failure to state a claim upon which relief can be granted."). In Imbler v. Pachtman, 424 U.S. 409 (1976), the Supreme Court explained:

> The procedural difference between the absolute and qualified immunities is important. An absolute immunity defeats a suit at the outset, so long as the official's actions were within the scope of the immunity. The fate of an official with qualified immunity depends upon the circumstances and motivations of his actions, as established by the evidence at trial.

Id. at 419 n.13. Accordingly, when a qualified immunity defense is asserted in a Rule 12(b)(6) motion, "[n]ot only must the facts supporting the defense appear on the face of the complaint, . . . [but] the motion may be granted only where 'it appears beyond doubt that the plaintiff can prove

10

no set of facts in support of his claim that would entitle him to relief.'" McKenna v. Wright, 386 F.3d 432, 436 (2d Cir. 2004) (quoting Citibank, N.A. v. K-H Corp., 968 F.2d 1489, 1494 (2d Cir. 1992)) (internal citation omitted). Furthermore, "the plaintiff is entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the immunity defense." Id. I therefore consider Dr. Gauvin's and McKenzie's assertions of qualified immunity mindful of the fact that this court may not dismiss Plaintiff's claims if they pass muster under the liberal pleading standards set forth in Rule 12(b)(6).

"Government agents enjoy qualified immunity when they perform discretionary functions if either (1) their conduct 'did not violate clearly established rights of which a reasonable person would have known,' or (2) 'it was objectively reasonable to believe that [their] acts did not violate these clearly established rights.'" Young v. County of Fulton, 160 F.3d 899, 903 (2d Cir. 1998) (quoting Soares v. Connecticut, 8 F.3d 917, 920 (2d Cir. 1993)) (alteration in original).

This court finds that Defendants' motion on this basis is premature, because it would require this court to arrive at factual determinations impermissible under the liberal pleading rules of Fed. R. Civ. Pro. 12(b)(6). Defendants assert that Plaintiff's allegations regarding Gauvin and McKenzie do not rise to the level of "deliberate indifference." (Def's' Mem. Supp. Mot. Dismiss at 10-11.) Defendants further "contend that it was objectively reasonable to believe that their actions did not violate Flemming's rights during his incarceration in 2002-2003." (Id. at 12.)

As stated supra, I reject Defendants' argument that a failure to provide necessary medical treatment does not amount to a violation of the Eighth Amendment as a matter of law. Furthermore, I find that it may be fairly inferred that Gauvin and McKenzie were aware of the well-established law that "the Eighth Amendment forbids not only deprivations of medical care

that produce physical torture and lingering death, but also less serious denials which cause or perpetuate pain." Todaro v. Ward, 565 F.2d 48, 52 (2d Cir. 1977). It was also well-established during the relevant period that prison officials must provide inmates with "reasonably necessary medical care." Langley v. Coughlin, 888 F.2d 252, 254 (2d Cir. 1989). The Second Circuit ruled nearly ten years before the alleged denial of treatment in the instant case that an inmate's degenerative hip condition is "serious" where the plaintiff "continued to experience great pain over an extended period of time and had difficulty walking." Hathaway v. Coughlin, 37 F.3d 63, 67 (2d Cir. 1994). Accordingly, it would not be appropriate for this court to accept Defendants' argument in a Rule 12 motion that their actions could not violate the Eighth Amendment or were "objectively reasonable." See Harrison v. Barkely, 219 F.3d 132, 140 (2d Cir. 2000) (denying defendant prison officials' qualified immunity claim where plaintiff alleged that prison refused to extract decaying tooth until he consented to removal of a different tooth); Hoover v. Hardman, 99-CV-1855, 2005 U.S. Dist. LEXIS 42974, at *32-*33 (N.D.N.Y. Aug. 15, 2005) (adhering to recommendation to deny summary judgment on Eighth Amendment claim on qualified immunity ground because denial of medical access not "objectively reasonable"). Thus, the question of whether Defendants' alleged denial of medical treatment "amounted to deliberate indifference to serious medical needs or merely involved misdiagnosis or malpractice not of constitutional dimensions, are questions obviously requiring determinations by the finder of facts." Langley, 888 F.2d at 254. I therefore deny Defendants' motion to dismiss Plaintiff's claims against Gauvin and McKenzie on the basis of qualified immunity, without prejudice to the reconsideration of such a motion at the conclusion of discovery.

## III. CONCLUSION

Defendants' motion to dismiss is GRANTED as to all unnamed defendants and the New York City Department of Corrections and DENIED as to New York City, Yves Gauvin, M.D., and Suzette McKenzie. To the extent that Plaintiff moves under Fed. R. Civ. P. 56(c) for summary judgment, that motion is DENIED.

SO ORDERED.

Dated: Brooklyn, New York
September 29, 2006

/s/
NICHOLAS G. GARAUFIS
United States District Judge