UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X

WOODROW FLEMMING,

                 Plaintiff,        **REPORT AND RECOMMENDATION**
                                        **03 CV 662 (NGG)(LB)**

      -against-

CITY OF NEW YORK, YVES GAUVIN, M.D.,
and SUZETTE MCKENZIE,

                 Defendants.

------------------------------------------------------X

**BLOOM, United States Magistrate Judge:**

      Plaintiff, Woodrow Flemming, brings this pro se action under 42 U.S.C. §1983, alleging that defendants City of New York, Yves Gauvin, M.D. and Suzette McKenzie (collectively referred to herein as "defendants"), violated his rights under the Eighth Amendment of the United States Constitution. Defendants move for summary judgment pursuant to Fed R. Civ. P. 56.[1] The Honorable Nicholas G. Garaufis referred defendants' motion to me for a Report and Recommendation in accordance with 28 U.S.C. § 626(b). For the reasons set forth below, it is respectfully recommended that defendants' motion should be granted.

## BACKGROUND

      Plaintiff was in custody of the New York City Department of Corrections ("NYCDOC") from April 18, 2002 through October 3, 2003, at which time he was transferred to the New York State Department of Corrections ("NYSDOC"). (Defs.' Statement of Undisputed Facts Pursuant to Rule 56.1 "Defs.' Statement" ¶¶10, 30, annexed to Defs.' Notice of Motion for Summary

---

[1] Defendants provided plaintiff with the requisite notice pursuant to Local Civil Rules 56.2. (Document 148).

Judgment; document 146.)[2] While exiting his cell on September 1, 2002, plaintiff alleges that he slipped on water coming from a leak in the nearby showers and fell. (Am. Compl. at 4; Flemming Dep. 95:10-14, December 6, 2006, annexed to Defs.' Notice of Motion for Summary Judgment ("Defs.' Motion," Exhibit J.)[3] Plaintiff was taken to Correctional Health Services, New York City Health and Hospitals Corporation ("CHS") where he complained of left shoulder pain and was then transferred to Bellevue Hospital, where he also complained of lower back pain. (Am. Compl. at 4; Defs.' Statement ¶¶14, 15.) At Bellevue, an x-ray of plaintiff's shoulder was taken and plaintiff was given ibuprofen. (Am. Compl. at 4; Defs.' Statement ¶15.) Plaintiff's x-ray did not show signs of a fracture. (Defs.' Statement ¶16.)

Plaintiff was discharged and returned to NYCDOC's custody on September 1, 2002. (Defs.' Statement ¶15.) Plaintiff's treating physician was defendant Yves Gauvin, MD. (Am. Compl. at 5; Defs.' Statement ¶11.) Plaintiff was also seen by the patient advocate, defendant Suzette McKenzie, who was not a nurse administrator or medical personnel. (Def.'s Statement of Undisputed Facts ¶12.) While in NYCDOC's custody, plaintiff states that he "complain[ed] to ever[y]one from the time [he] got there and no one took th[eir] time to give [him] the proper care." (Am. Compl. at 4.) Plaintiff alleges that defendants "[k]new that [he] was complain[in]g about [his] back and shou[l]der" but were deliberately indifferent to his serious medical need.

---

[2] Rule 56.1 of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York ("Local Rule 56.1") requires a party moving for summary judgment to submit "a separate, short and concise statement" of the allegedly undisputed material facts, set out in numbered paragraphs, on which the moving party relies in arguing that there is no genuine issue to be tried. See Local Rule 56.1(a); see also Gianullo v. City of New York, 322 F.3d 139, 140 (2d Cir. 2003); Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 72 (2d Cir. 2001). Although, defendants filed a 56.1(a) statement, plaintiff did not file a counterstatement. However, the Court does not rely on the statement of undisputed facts contained in the Rule 56.1 statement: "[i]t must be satisfied that the citation to the evidence in the record supports the assertion." Vt. Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004); see Gianullo, 322 F.3d at 143 n.5. Therefore, the Court deems admitted only those facts that are supported by admissible evidence and not controverted by the record. See Local Rule 56.1(c).

[3] References are to the exhibits annexed to defendants' motion for summary judgment.

(Am. Comp. at 3.) Plaintiff states that from September 2002 to November 2002, he was told by the "Clinic Administrator" and Gauvin that he would be scheduled for an x-ray and Magnetic Resonance Imaging ("MRI") for his back, but that neither was done. (Pl.'s Aff. at 2, 5, attached to Pl.'s Motion for Summary Judgment; document 156-2.)

Plaintiff's CHS records indicate that he complained of shoulder pain the day after his fall on September 2, 2009 and again on September 4, 2002, September 6, 2002, and September 18, 2002, at which time another x-ray was recommended. (Exhibit G at 64, 65, 66, 67, 75.) Plaintiff was treated with pain relievers. (Id.) Plaintiff's records do not reflect that he complained of shoulder pain again until November 21, 2002, at which time he was provided with pain relievers, and then again on April 26, 2003, at which time he was sent for an x-ray, which showed no abnormalities. (Id. at 109, 184, 246.) Plaintiff's records reflect no complaints by plaintiff regarding his back from September 3, 2002 through November 2002, when plaintiff filed his original complaint with the Court. (Exhibit G.)

On January 2, 2003, plaintiff injured his left knee while being transported on a NYCDOC's bus. (Exhibit G at 216.) Plaintiff's knee was immobilized, and plaintiff was given a cane to assist him in ambulating. (Id. at 217.) Plaintiff underwent an MRI on his knee on April 22, 2003. (Id. at 248.) On February 21, 2003, after complaining of back pain, plaintiff was sent for an x-ray of his spine, which was interpreted as "unremarkable." (Id. at 223, 238.) Plaintiff underwent another x-ray on May 13, 2003, which was interpreted as "no acute fracture." (Id. at 224.) CHS records reflect that on April 23, 2003, plaintiff complained that he had suffered from back pain since his knee injury in January 2003. (Id. at 182.) On July 11, 2003, it was recommended that plaintiff receive an MRI of his spine, however the MRI was not

3

performed prior to plaintiff's transfer to NYSDOC's custody on October 3, 2003.[4] (Defs.' Statement ¶¶24, 29.) Plaintiff states that his MRI was delayed because he suffered "heart problems" and was then transferred to NYSDOC's custody shortly thereafter. (Flemming Dep. 92:3-14.) An MRI of plaintiff's back was performed on December 29, 2003 which showed "no significant [] abnormalities" and "no evidence of disc herniation or spinal stenosis." (Exhibit I at 1a.)

Plaintiff states that as a result of not receiving an MRI, he is in constant pain, uses a wheel chair, walker or cane, cannot walk, stand, sit or sleep for long periods of time. (Am. Comp. at 5.) Defendants, however, argue that plaintiff suffered injury to his back and shoulder prior to the September 1, 2002 incident. Plaintiff concedes that he slipped and fell on oil while at a U-Haul in July 1998 (Flemming Dep. 12:2-3, 12:9-15) and that he hurt his back in the L4, L5, L6 regions (id. at 12:16-17). Plaintiff also acknowledges that he previously used a wheelchair and cane to ease the pain in his back after being pushed down on September 11, 2001. (Flemming Dep. 126:4-14.) Prior to entering NYCDOC's custody, plaintiff was also treated at St. Barnabas Hospital and the Veteran's Administration Medical Center ("VAMC") for his back. (Flemming Dep. 74:22-75:4, 77:3-6, 77:12-17; Exhibit J.)

Plaintiff argues in his affidavit in support of his motion for summary judgment, however, that he never claimed he had issues regarding his back and knee and that his complaint is for his "left shoulder, neck, arm, left hip side." (Pl.'s Aff. at 3-4.) Plaintiff also objects to defendants' inclusion of records from NYSDOC.[5] Plaintiff states that there is a pattern and practice of abuse

---

[4] Plaintiff states defendants have perjured themselves because he was transferred to NYSDOC's custody on October 6, 2003. (Flemming Dep. 92:13; Pl.'s Aff. at 5.) Defendants include the CHS record in their Reply Affirmation in Support of Motion and in Opposition to Plaintiff's Motion for Summary Judgment ("Defs.' Reply"), which lists October 3, 2003 as plaintiff's discharge date. (Exhibit M.)

[5] Plaintiff also includes records maintained by NYSDOC in support of his motion for summary judgment. (Pl.'s Exhibit, attached to Pl.'s Motion for Summary Judgment; 156-4.) Defendants obtained these NYSDOC's

at Rikers Island, where the medical staff "cover up for each other" and the supervisors encourage the practice of treating inmates only "60%" of the time. (Pl.'s Addendum/Opp. to Def.'s Motion for Summary Judgment "Pl.'s Addendum" at 3; document 155).[6]

## PROCEDURAL HISTORY

Plaintiff's action was filed in the Southern District of New York on November 19, 2002 and was transferred to this Court on January 15, 2003. (Documents 1, 2.) On July 8, 2003, the Court directed plaintiff to file an amended complaint and when plaintiff failed to comply with the Court's Order, the case was dismissed on October 23, 2003. (Documents 4, 5.) On October 31, 2003, the Court reopened plaintiff's case (document 7) and again extended his time to file an amended complaint (document 13). Based on the letters filed by plaintiff, the Court permitted plaintiff to file an amended complaint for inadequate medical treatment. (Document 20.) Plaintiff filed an amended complaint on August 9, 2004 naming the City of New York, Gauvin, McKenzie, John and Jane Does and NIC Rikers Island Annex. (Am. Comp.; document 30.) On September 29, 2006, the Court denied plaintiff's motion for summary judgment and granted in part defendants' motion to dismiss the unnamed defendants as well as the NIC Rikers Island Annex, a subdivision of the New York City Department of Corrections. (Document 67.) The

---

records by processing the release plaintiff signed during discovery and plaintiff was provided with copies of all medical records that were obtained.

[6] Plaintiff alleges for the first time in his opposition that defendants violated his due process rights by failing to provide him with an MRI for five years (Pl.'s Addendum at 7) and for negligently creating an unsafe condition (id. at 9). "[I]t is inappropriate to raise new claims for the first time in submissions in opposition to summary judgment." Beckman v. United States Postal Serv., 79 F.Supp.2d 394, 407 (S.D.N.Y. 2000). Plaintiff has not sought leave to amend his complaint to include these claims. Furthermore, the statute of limitations has run on any proposed due process claim, see Storman v. Klein, No. 09 Civ. 0338(SHS)(AJP), 2009 WL 1035964, 18 (S.D.N.Y. April 20, 2009) (statute of limitations for a §1983 action is three years) (citing McKithen v. Brown, 481 F.3d 89, 100 n. 12 (2d Cir. 2007), cert. denied, 128 S.Ct. 1218 (2008)) and on any negligence claim, see Smalls v. Fraser, No. 05 Civ. 6575(WHP)(TH), 2006 WL 2336911, 5 (S.D.N.Y. August 11, 2006) ("a one year and ninety day statute of limitations governs tort claims brought against New York municipalities [and their employees].") (citing N.Y. Gen. Mun. Law § 50-I). Therefore, the Court should not address these claims.

5

Court denied defendants' motion as to the City of New York, Gauvin and McKenzie. (Id.)
Defendants now move for summary judgment and plaintiff cross moves for summary judgment.

## STANDARD OF REVIEW

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material if it is one that "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Lazard Freres & Co. v. Protective Life Ins. Co., 108 F.3d 1531, 1535 (2d Cir. 1997) (quoting Anderson, 477 U.S. at 248 ); see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "The trial court's function in deciding such a motion is not to weigh the evidence or resolve issues of fact, but to decide instead whether, after resolving all ambiguities and drawing all inferences in favor of the non-moving party, a rational juror could find in favor of that party." Pinto v. Allstate Ins. Co., 221 F.3d 394, 398 (2d Cir. 2000). For the purposes of summary judgment, the facts here are viewed in the light most favorable to plaintiff.

"An adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); see Matsushita, 475 U.S. at 586-87 (1986). In other words, the non-moving party must provide "affirmative evidence" from which a jury could return a verdict in its favor. Anderson, 477 U.S. at 257. "Conclusory allegations, conjecture, and speculation ... are

insufficient to create a genuine issue of fact." Niagra Mohawk Power Corp. v. Jones Chemical, Inc., 315 F.3d 171, 175 (2d Cir. 2003) (quoting Kerzer v. Kingly Mfg., 156 F.3d 396, 400 (2d Cir. 1998)). Moreover, "[t]he 'mere existence of a scintilla of evidence' supporting the non-movant's case is also insufficient to defeat summary judgment." Id. (quoting Anderson, 477 U.S. at 252). When a party is proceeding *pro se*, the Court is obliged to "interpret that party's supporting papers liberally, that is, 'interpret them to raise the strongest arguments that they suggest.'" Forsyth v. Federation Employment and Guidance Service, 409 F.3d 565, 569 (2d Cir. 2005) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)).[7]

## DISCUSSION

### I. Eighth Amendment

The Eighth Amendment, made applicable to the States by the Fourteenth Amendment, prohibits the infliction of "cruel and unusual punishment." U.S. CONST. amend VIII; Estelle v. Gamble, 429 U.S. 97, 101 (1976)(internal citation omitted). "In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove 'deliberate indifference to [his] serious medical needs.'" Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998) (quoting Estelle v. Gamble, 429 U.S. at 104). To establish a violation of the Eighth Amendment, each defendant's liability depends on a showing that he or she acted with deliberate indifference. See Brock v. Wright, 315 F.3d 158, 164 (2d Cir. 2003) (stating that plaintiff must show deliberate indifference on the part of a "particular defendant"). To establish deliberate indifference, a plaintiff must satisfy both an objective and subjective component. Smith v. Carpenter, 316 F.3d 178, 183-84 (2d Cir. 2003) (internal citations omitted)).

---

[7] Defendants request that the Court decline to exercise supplemental jurisdiction over any state law claim that could be construed in plaintiff's amended complaint. (Defs.' Memo at 18.) However, as stated in the Order dated September 29, 2006, "this court finds no assertion of a state law claim." (Document 67 at 2, n. 1.)

## A. Objective Component of Deliberate Indifference

Plaintiff must establish that he was subjected to conditions that are, in objective terms, "sufficiently serious." Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994) (citations omitted). "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious'." Smith, 316 F.3d 178, 183-84. A medical condition is considered objectively serious under the Eighth Amendment if it is "a condition of urgency, one that may produce death, degeneration or extreme pain." Morales v. Mackalm, 278 F.3d 126, 132 (2d Cir. 2002) (citing Hathaway, 37 F.3d at 66).

Plaintiff argues that defendants "[k]new that [he] was complain[in]g about [his] back and shou[l]der" but were deliberately indifferent to his serious medical need. (Am. Comp. at 3.) Defendants, however, argue that plaintiff's x-ray of his shoulder was negative for abnormalities, that he was discharged from Bellevue with "full active range motion of the left shoulder," that while plaintiff "complained intermittently of back and shoulder pain, such complaints were consistent with his history of a prior, chronic, back pain" and that there was no "acute injury that mandated an MRI." (Defs.' Memorandum of Law in Support of Defs.' Motion for Summary Judgment "Defs.' Memo." at 3, 9.) Defendants also argue that "there was no evidence of any

new injury, or that the injuries he suffered in the 1998 accident were exacerbated by the September 2002 fall."[8] (Id. at 10.)

Depending on the circumstances, severe back pain may qualify as a "serious medical need."[9] Similarly, severe shoulder pain may also qualify as a serious medical need.[10] However, in May 2004, plaintiff was informed that his back pain was due to his poor posture and that a neurosurgeon had agreed that plaintiff did not have significant lumbar disease. (Id. at 278). On July 5, 2004, plaintiff was observed ambulating without difficulty (id. at 227) and on July 28, 2004, plaintiff's x-ray results and Computed Tomography ("CT") scans returned negative (id. at 225). Furthermore, on April 28, 2005, it was determined, based on the MRI results of plaintiff's back, that he no longer needed a wheelchair and only needed a cane for

---

[8] Defendants spend great effort on relating numerous occasions where plaintiff was observed by NYSDOC's personnel "engaged in physical activities that . . . would be precluded by the injuries claimed herein." Defs.' Memo. at 4. For example, on December 28, 2003 plaintiff was observed carrying a typewriter without the use of his cane or walker (Exhibit I at 291); on January 6, 2004, plaintiff had no difficulty sitting and rising from the floor (id. at 293); on January 13, 2004, plaintiff kneeled doing paperwork for two hours (id. at 295); on February 26, 2004, a doctor noted that plaintiff walks, bends, and stoops without difficulty but "acts" stiff and grunts "in my presence" (id. at 209, 284). These observations do not disprove plaintiff's allegation that his condition was sufficiently serious.

[9] See Morrison v. Mamis, No. 08 Civ. 4302(PAC)(AJP), 2008 WL 5451639, 8 (S.D.N.Y. December 18, 2008) (citing cases Mendoza v. McGinnis, No. 05 Civ. 1124, 2008 WL 4239760 at 10 & n. 16 (N.D.N.Y. Sept. 11, 2008) ("In this instance, given plaintiff's diagnosed condition of degenerative disc disease. . . I conclude that a reasonable fact finder could find that the condition constitutes a serious medical need."); Nelson v. Rodas, No. 01 Civ. 7887 (RCC)(AJP), 2002 WL 31075804 at 14 (S.D.N.Y. September 17, 2002) ("Severe back pain, especially if lasting an extended period of time, can amount to a 'serious medical need' under the Eighth Amendment."); cf. Cain v. Jackson, 05 Civ. 3914, 2007 WL 2193997 at 1, 6 (S.D.N.Y. July 27, 2007) (prisoner's degenerate disc disease in her cervical spine, which was compounded when she fell from her cell bunk and injured her back, was not "sufficiently serious" to implicate the Eighth Amendment); Davis v. Reilly, 324 F.Supp.2d 361, 368 (E.D.N.Y. 2004) (A "sprained back and neck ... do not constitute a serious medical condition."); Rodriguez v. Mercado, 00 Civ. 8588, 2002 WL 1997885 at 2-3, 8 (S.D.N.Y. Aug. 28, 2002) (Prisoner's back pain and migraines not "sufficiently serious" to implicate Eighth Amendment.)

[10] See Sereika v. Patel, 411 F.Supp.2d 397, 406 (S.D.N.Y. 2006) (allegations of "severe pain ... [and] reduced mobility ..." in the shoulder are sufficient to raise a material issue of fact as to a serious medical need); Goros v. Cent. Office Review Comm., No. 03 Civ. 407, 2006 WL 2794415 at 6 (N.D.N.Y. Sept. 26, 2006) (plaintiff's allegations of 'worse[ning] pain' in his left shoulder and legs may establish a sufficiently serious medical need); Guarneri v. Bates, 05 Civ. 444 (GLS)(DRH), 2008 WL 686809, 5 (N.D.N.Y. March 10, 2008) (shoulder injury constitutes a serious medical need where plaintiff contends that his alleged rotator cuff tear left him in severe pain and that he could not move his arm).

long distances. (Id. at 190). In light of the MRI of plaintiff's back showing "no significant [] abnormalities" and "no evidence of disc herniation or spinal stenosis" (Exhibit I at 1a) and the x-rays which showed his shoulder "negative for abnormalities" (Exhibit G at 64, 246), plaintiff's shoulder and back injuries were not sufficiently serious to satisfy the objective component of the Eighth Amendment analysis. Furthermore, even if plaintiff's injuries were sufficiently serious, plaintiff fails to establish that defendants denied him adequate medical care.

"Determining whether a deprivation is an objectively serious deprivation entails two inquiries. The first inquiry is whether the prisoner was actually deprived of adequate medical care. As the Supreme Court has noted, the prison official's duty is only to provide reasonable care." Salahuddin v. Goord, 467 F.3d 263, 279 (2d Cir. 2006) (citing Farmer v. Brennan, 511 U.S. 825, 844-47 (1994)). "Second, the objective test asks whether the inadequacy in medical care is sufficiently serious. This inquiry requires the court to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." Id. at 280. Therefore, while failing "to take reasonable measures" in response to a medical condition can lead to liability, Salahuddin, 467 F.3d at 279 (citing Farmer v. Brennan, 511 U.S. at 847), "prison officials who act reasonably [in response to an inmate-health risk] cannot be found liable under the Cruel and Unusual Punishments Clause," id. (citing Farmer v. Brennan, 511 U.S. at 845).

Plaintiff alleges that he suffered back and shoulder pain after slipping and falling on water. Plaintiff claims that despite his numerous requests for an MRI of his back, defendants failed to perform this test and that as a result, he is in constant pain, uses a wheel chair, walker or cane, and that he cannot walk, stand, sit or sleep for long periods of time. However, after plaintiff's fall, he was immediately taken to CHS and then to Bellevue Hospital, where an x-ray

10

of plaintiff's shoulder was taken and he was provided with pain medication. While plaintiff's x-ray did not show signs of a fracture, defendants followed up with plaintiff on September 2, 2002, the day after his fall, and throughout the month of September.[11] During his follow up visits, plaintiff complained of shoulder pain on September 2nd, 4th, 6th and 18th, at which times he was given pain relievers and another x-ray of his shoulder was recommended. The record does not reflect complaints of shoulder pain again until November 21, 2002, and April 26, 2003, at which time plaintiff was sent for another x-ray, which again reflected no abnormalities.

Regarding plaintiff's back, the CHS records reflect that plaintiff did not begin regularly complaining about his back until January 2003, at which time he was sent for an x-ray of his spine, which was interpreted as "unremarkable." (Exhibit G at 238.) Plaintiff underwent another x-ray on May 13, 2003, which was interpreted as "no acute fracture," (id. at 224) and on July 11, 2003, it was recommended that plaintiff receive an MRI of his spine, which was performed on December 29, 2003 and showed "no significant [] abnormalities" and "no evidence of disc herniation or spinal stenosis" (Exhibit I at 1a). Therefore, plaintiff fails to demonstrate that defendant denied him adequate medical care.

Plaintiff's claim that defendants' deliberate indifference resulted in his permanent use of a wheel chair, walker or cane is contradicted by plaintiff's medical records. Defendants argue that there is no evidence in the NYSDOC's chart that plaintiff currently uses a walker, wheelchair or cane. (Defs.' Reply ¶5.) Plaintiff, however, argues that he still uses a cane and a wheelchair from "time to time" (Pl.'s Aff. at 3) but the records he submits state that his use of a wheelchair has been discontinued and his cane has been taken away. (Pl.'s Exhibit at 1, 44; document 156-4; see also Exhibit I at 190.) Furthermore, plaintiff acknowledges that he used a

---

[11] Plaintiff was seen by medical staff on September 4, 2002, September 6, 2002, September 11-13, 2002, September 17-20, 2002, September 24, 2002 and September 27, 2002. (Exhibit G.)

wheelchair and cane to alleviate his back pain prior to entering NYCDOC's custody. (Flemming Dep. 126:4-14.)

Plaintiff repeatedly argues that he was assured by defendants that he would receive an MRI of his back but that an MRI was never performed. Defendants maintain that no MRI was recommended for plaintiff's back prior to July 11, 2003 or at anytime for his shoulder. (Defs.' Memo at 4, 5). In deliberate indifference cases, "the essential test is one of medical necessity and not one simply of desirability." Dean v. Coughlin, 804 F.2d 207, 215 (2d Cir. 1986) (internal citations and quotations omitted). "It is well-established that mere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." Chance v. Armstrong, 143 F.3d at 703; see also Hathaway v. Coughlin, 37 F.3d at 70 ("'We do not sit as a medical board of review. Where the dispute concerns not the absence of help, but the choice of a certain course of treatment, or evidences mere disagreement with considered medical judgment, we will not second guess the doctors.'") (internal citations omitted). "Whether an MRI should have been done 'is a classic example of a matter for medical judgment' as to the appropriate course of treatment and is not actionable under the Eighth Amendment." Joyner v. Greiner, 195 F.Supp.2d 500, 505 (S.D.N.Y. 2002)(internal citation omitted); see also Sonds v. St. Barnabas Hosp. Correctional Health Services, 151 F.Supp.2d 303, 312 (S.D.N.Y. 2001) ("Thus, disagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists or the timing of their intervention, are not adequate grounds for a Section 1983 claim. These issues implicate medical judgments and, at worst, negligence amounting to medical malpractice, but not the Eighth Amendment.") (citing Estelle, 429 U.S. 107)); Adams v. Perez, No. 08 Civ.

4834(BSJ) (MHD), 2009 WL 513036, 4 (S.D.N.Y. February 27, 2009) (the decision to not order an MRI is not a situation that is actionable under the Eighth Amendment); Nelson v. Rodas, No. 01 Civ. 7887 (RCC)(AJP), 2002 WL 31075804, 14 -15 (S.D.N.Y. September 17, 2002) ("[T]he question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment.") (citing cases).

Plaintiff received prompt and appropriate medical attention after his fall in 2002. Plaintiff's disagreement regarding his need and the appropriate time for an MRI does not establish an Eighth Amendment violation. Therefore, plaintiff fails to meet the objective prong of the deliberate indifference test.

### B. Subjective Component of Deliberate Indifference

Even if plaintiff could establish that his injury to his shoulder and back was sufficiently serious and that he was not provided with adequate medical treatment to satisfy the objective component of the deliberate indifference test, plaintiff could not satisfy the subjective component. The subjective component of deliberate indifference requires a plaintiff to establish that defendant "'kn[e]w of and disregard[ed] an excessive risk to [his] health or safety,'" Chance, 143 F.3d at 702 (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)). Defendants had to act with a sufficiently culpable state of mind, Smith v. Carpenter, 316 F.3d at 184 (citations omitted), a state of mind "equivalent to the familiar standard of 'recklessness' as used in criminal law," Phelps v. Kapnolas, 308 F.3d 180, 186 (2d Cir. 2002) (per curiam).

Defendants argue that plaintiff fails to establish the requisite state of mind for defendants Gauvin and McKenzie. (Defs.' Memo at 15.) Defendants state that defendant Gauvin, requested

an MRI when Bellevue deemed it necessary and that defendant McKenzie, who was not a medical care provider and therefore was not permitted to order medication or tests, administratively followed up on plaintiff's MRI. (Id. at 15.) Defendants also state there has not been a "departure from the standard of care." (Exhibit A at 5.)

In the landmark case Estelle v. Gamble, the Supreme Court set forth cases in which prison officials were held to be deliberately indifferent to the serious medical needs of prisoners, which included a doctor throwing out a prisoner's ear and stitching the stump together, a doctor injecting a prisoner with penicillin with the knowledge that prisoner was allergic to the drug and then refusing to treat the allergic reaction, and a prison physician both refusing to administer the prescribed pain killer and rendering the prisoner's leg surgery unsuccessful by requiring the prisoner to stand despite his surgeon's contrary instructions. 429 U.S. at 104 n. 10. A finding of deliberate indifference has been reserved for cases where, for instance, "officials deliberately delayed care as a form of punishment; ignored a life threatening and fast-degenerating condition for three days, or delayed major surgery for over two years." Espinal v. Coughlin, No. 98 Civ. 2579, 2002 WL 10450, at *3 (S.D.N.Y. Jan. 3, 2002) (internal quotations and citations omitted). "Mere negligence in diagnosis or treatment is insufficient to state a valid Eighth Amendment claim" and "'[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner.'" Smith, 316 F.3d at 184 (citing Estelle, 429 U.S. at 105-06).

Plaintiff was seen routinely and consistently by medical personnel throughout his custody at NYCDOC. (Exhibit G). Aside from the date of plaintiff's slip and fall, September 1, 2002, at which time x-rays were ordered for plaintiff's shoulder, the record reflects only a few complaints of shoulder pain by plaintiff, at which time another x-ray was ordered. These x-rays showed no abnormalities. In addition, plaintiff himself states that he began suffering from consistent back

pain after his knee injury in January 2003. (Exhibit G at 182.) After plaintiff began complaining of back pain, he was sent for x-rays in February 2003 and May 2003 (Exhibit G at 223, 224, 238) and an MRI was recommended in July of 2003 (Defs. Statement ¶24). Plaintiff alleges defendants Gauvin and McKenzie did not provide him with an MRI. However, Gauvin ordered an MRI for plaintiff when Bellevue Hospital recommended it. There is no record evidence that Gauvin or McKenzie delayed, denied or interfered with plaintiff getting an MRI. Furthermore, defendant McKenzie did not have authority to order an MRI for plaintiff. Therefore, even if plaintiff had satisfied the objective component for an Eighth Amendment violation, plaintiff fails to establish the subjective component of deliberate indifference as to defendants Gauvin and McKenzie. Therefore, defendants' motion should be granted.

## II. Municipal Liability

In order to establish municipal liability under §1983, a plaintiff must demonstrate an officially adopted policy, custom or practice caused the deprivation of his or her constitutional rights. Monell v. Dept. of Soc. Servs., 436 U.S. 658, 690-91 (1978). "Proof of a single incident of unconstitutional activity is not sufficient to impose [municipal liability]." City of Oklahoma City v. Tuttle, 471 U.S. 808, 823-24 (1985). Furthermore, "a municipality may not be found liable simply because one of its employees committed a tort." Roe v. City of Waterbury, 542 F.3d 31, 36 (2d Cir. 2008) (quoting Bd. of County Comm'rs v. Brown, 520 U.S. 397, 405 (1997)).

Plaintiff argues that there is a pattern of abuse at Rikers Island, where the medical staff "cover up for each other" and the supervisors encourage the practice of treating inmates only "60%" of the time. (Pl.'s Addendum at 3.) However, plaintiff has failed to set forth any

evidence demonstrating an officially adopted policy, custom or practice that resulted in the violation of his Eighth Amendment rights. Defendants' motion for summary judgment should therefore be granted. See Johnson & Johnson Consumer Companies, Inc. v. Aini, 540 F.Supp.2d 374, 383 (E.D.N.Y. 2008) ("the nonmoving party may not rely on '[c]onclusory allegations, conjecture, and speculation,' but must affirmatively 'set out specific facts showing a genuine issue for trial'") (citing Kerzer v. Kingly Mfg., 156 F.3d 396, 400 (2d Cir.1998); Fed.R.Civ.P. 56(e)).

### III. Qualified Immunity

As the Court finds no violation of plaintiff's Eighth Amendment rights, the Court need not address qualified immunity.

### CONCLUSION

Accordingly, defendants' motion for summary judgment should be granted and plaintiff's complaint should be dismissed. It is further recommended that for the purpose of an appeal *in forma pauperis*, the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from a judgment entered herein would not be taken in good faith. See Coppedge v. United States, 369 U.S. 438 (1962).

16

**FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

Pursuant to 28 U.S.C. §636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the ten-day period. Failure to file a timely objection to this Report generally waives any further judicial review. Marcella v. Capital Dist. Physician's Health Plan, Inc., 293 F.3d 42 (2d Cir. 2002); Small v. Sec'y of Health and Human Services, 892 F.2d 15 (2d Cir. 1989); see Thomas v. Arn, 474 U.S. 140 (1985).

/S/
LOIS BLOOM
United States Magistrate Judge

Dated: September 11, 2009
      Brooklyn, New York